**V. S. DiCARLO GENERAL CONTRACTORS, INC., et al., Plaintiffs-Respondents,**

v.

**KANSAS CITY AREA TRANSPORTATION AUTHORITY OF the KANSAS CITY AREA TRANSPORTATION DISTRICT et al., Defendants-Respondents,**

**and**

**Sharp Bros. Contracting Company and L. D. White Construction Company, Inc., Individually and d/b/a Sharp/White, a joint venture, Defendants-Appellants.**

**No. KCD 28235.**

Missouri Court of Appeals, Kansas City District.

April 3, 1978.

Thomas J. Leittem, John H. Altergott, Jr., Jeffrey A. Dunn, Kansas City, for defendants-appellants.

Norman O. Sanders, Kansas City, for plaintiffs-respondents.

Before WELBORN, Special Judge Presiding, PRITCHARD, J., and HIGGINS, Special Judge.

ROBERT R. WELBORN, Special Judge Presiding.

This action began as a suit for declaratory judgment and injunction brought by V. S. DiCarlo General Contractors, Inc., and Vernon L. Brown as joint venturers (DiCarlo), seeking to have their bid on a construction project by the Kansas City Area Transportation Authority (KCATA) declared to be the lowest and best bid on the project, to require KCATA to enter into a contract for the job with DiCarlo and to enjoin the KCATA from contracting with any other bidder on the project. Other bidders, including Sharp Bros. Contracting Company and L. D. White Construction Company, Inc., a joint venture d/b/a "Sharp/White," were parties defendant as was Mary H. Hayes, Director of the Department of Human Relations of the City of Kansas City.

Upon trial to the court, a decree was entered setting aside the award of the contract to Sharp/White and ordering KCATA to reconsider the bids and determine which contractor was the "lowest responsive bidder" and to enter into a contract with such contractor. Sharp/White have appealed.

KCATA is a governmental entity, organized by way of a compact between the States of Missouri (§ 238.010, et seq., RSMo 1969) and Kansas (KSA 12–2524, et seq. (1975)) to provide mass transit in the greater Kansas City area. KCATA planned to construct a general offices and central services facility in Kansas City. 80% of the funding for the project was to be provided by the Urban Mass Transit Authority (UMTA) of the United States Department of Transportation. The project was advertised for bids to be received and opened at 2:00 P.M., February 5, 1975. Among the requirements of the bidding proposal was that contractors submit in their bid documents evidence of intention to comply with affirmative action goals for employment of minority workers on the project. The KCATA affirmative action program involved setting aside for minority subcontractors eight designated areas of work on the project. Bids were required to include as part of the bid documents an affidavit from the bidder, setting out the name of the minority subcontractor with which the contractor would contract for various areas of the job and the estimated dollar value of the work in such areas so to be awarded.

UMTA had designated the Department of Human Relations of the City of Kansas City as its monitoring agency for compliance with federal minority regulations. That agency was also in charge of the locally ordained minority hiring program. Mary Hayes Walker was the Director of the Department of Human Relations.

Four general contractors submitted bids on the project (UMTA Project No. IT–03–0020). The bids were opened and the gross amounts of each bid read as follows:

| | |
|---|---|
| J. E. Dunn, Jr. & Associates | $9,825,200.00 |
| Sharp/White | $9,696,727.00 |
| DiCarlo/Brown | $9,487,700.00 |
| Thomas Construction Company | $9,320,000.00 |

The bids were studied by the architects and turned over to KCATA. Upon concluding that the Thomas bid was the lowest bid, the bid materials submitted by Thomas to evidence affirmative action compliance were referred to Ms. Hayes to determine whether or not Thomas's bid was responsive to the requirement that the contractor submit an adequate Affirmative Action Assurance Plan. Ms. Hayes determined that the Thomas bid was unresponsive because Thomas had designated as a subcontractor for the electrical work, one of the set-aside areas, a non-minority contractor. Thomas requested permission to substitute a minority contractor, but after discussion with the architects, after receiving an opinion of an assistant city counselor and after discussion with KCATA attorneys, Ms. Hayes concluded that substitution after submission of the bid was not permissible.

KCATA, nevertheless, passed a resolution for award of the contract to Thomas. UMTA refused to concur in the award because the bid was not responsive to the affirmative action requirement.

KCATA then submitted the DiCarlo Affirmative Action Assurance to Ms. Hayes. She found the information submitted by that bidder unresponsive because the listed electrical subcontractor was a non-minority contractor.

Ms. Hayes examined the Sharp/White program and found it responsive. UMTA was so advised and on March 20, 1975, UMTA informed KCATA that UMTA would concur only in an award of the contract to Sharp/White, or alternatively that all bids should be rejected and the project readvertised. On the same date the KCATA commissioners passed a resolution for the award of the contract to Sharp/White.

DiCarlo filed its lawsuit on March 13, 1975. By its original petition it attacked the refusal of Hayes to find the DiCarlo bid responsive. Subsequently, DiCarlo filed an amended petition alleging deficiencies in Sharp/White's proposal. Two individual DiCarlos joined the action as taxpayers.

Dunn as a contractor and taxpayer asked the court to enjoin issuance of any contract except to Dunn. Sharp/White moved to dismiss plaintiffs' petition and Dunn's counterclaim on the ground that the court had no jurisdiction of the cause and that the parties plaintiff had no standing to sue. The motion to dismiss was overruled.

By their answer Sharp/White restated the position that plaintiffs as unsuccessful bidders had no standing to sue. They also attacked the claim of plaintiffs as taxpayers and asserted that the UMTA was a necessary party to the litigation.

KCATA filed a general denial and also attacked plaintiffs' standing to sue. Ms. Hayes also filed a general denial.

On July 15, 1975, KCATA signed a contract with Sharp/White for construction of the building.

This case came to trial on July 21, 1975. On that date, Sharp/White filed a counterclaim against DiCarlo, Dunn and Thomas, charging tortious interference with proposed and existing contractual relations of Sharp/White. It alleged damage of at least $80,000 per month by reason of rising construction costs. The trial court sustained objection to trial of the counterclaim and ordered it tried separately.

The case proceeded to trial. On August 13, 1975, the trial court entered its judgment in which it found, among other things, that the action of Ms. Hayes in "rejecting" the bids of Thomas and DiCarlo was illegal, arbitrary and beyond her authority, that the right to refuse bids was given exclusively to KCATA and that Ms. Hayes's actions prevented KCATA from selecting the lowest and best bidder. The court voided the contract with Sharp/White and remanded the matter to KCATA to determine which of the four bidders was the lowest responsive bidder and for execution of a contract with such contractor.

On August 28, 1975, Sharp/White filed a voluntary dismissal, without prejudice, of its counterclaim. On August 29, 1975,

Sharp/White filed notice of appeal to this court.

The respondent Thomas has filed a motion to dismiss the appeal on numerous grounds, one of which is that the cause has become moot. In support of that motion, Thomas has presented the following additional facts, not contested by appellant.

Contemporaneously with the action in the Jackson County Circuit Court, the unsuccessful bidders filed a protest with the Comptroller General of the United States, complaining of the rejection of their bids and the acceptance of the Sharp/White bid. On August 11, 1975, the Deputy Comptroller rendered a decision in which he concluded that the Thomas bid had been improperly rejected. He recommended that Thomas be allowed to substitute an acceptable electrical subcontractor, and if thereafter the Thomas bid is found responsive and Thomas responsible, UMTA should advise KCATA that the contract with Sharp/White be terminated and that an award be made to Thomas.

This recommendation was followed. On August 18, 1975, UMTA withdrew its concurrence in the contract award to Sharp/White and concurred in the award of the contract to Thomas which had been voted by the KCATA commissioners on August 15. Appellants acknowledged that at the time of the filing of their brief (November 26, 1976), the project was 85% complete. Respondent estimated that the stage was 95% at the time of its motion (January 24, 1977). Unquestionably the project has now been substantially, if not finally, completed.

On the basis of these facts, Thomas moved for dismissal of the appeal on the grounds of mootness. Appellants acknowledge that a decision now cannot alter the fact that the project has been built. Appellants would have the appeal decided in order to "allow Sharp/White the opportunity to sue those of the plaintiffs and other defendants, as it chooses, for breach of contract, tortious interference with contractual relations, and other relief."

In the case of *State ex rel. Myers v. Shinnick*, 19 S.W.2d 676, 678[1, 2] (Mo.1929), the court stated:

"Courts are not organized and maintained for the purpose of vindicating the actions of parties in bringing lawsuits or to settle abstract propositions of law, where no relief can be granted. That some relief is sought which may be granted is the only reason the courts recognize for the prosecution of causes. If no relief can be granted, either because it appears that such relief has already been obtained, or because the situation has so changed that the relief sought cannot be granted, the court will not go through the empty formality of determining whether or not the relief asked for might have been granted, if it had not already been granted or could have been granted but for changed conditions. The case is then said to be 'moot.'"

In *Koch v. Board of Regents*, 265 S.W.2d 421 (Mo.App.1954), an injunction was sought to declare void a contract entered into by the Board of Regents for the restoration of a building on the campus of Northwest Missouri State College which had been partially destroyed by fire. The trial court sustained motions to dismiss the petition. The plaintiffs appealed. Defendants moved to dismiss the appeal on the grounds that the matter had become moot because, after the appeal had been taken, the contract had been fully performed and all payments thereunder had been duly paid. This court sustained the motion to dismiss the appeal because the cause had become moot.

That is the situation in this case. There can be no grant of effectual relief as sought by appellants in this cause.

Appellants' argument that favorable determination of the appeal would permit an action for damages does not negative the mootness of the case now before this court in which no such relief is sought. That a party might, if successful on appeal, bring another action for damages does not avoid mootness. In *Personal Finance Co. of Missouri v. Day*, 158 S.W.2d 197, 198[1] (Mo. App.1942), the court stated:

"The fact that the taxation of cost is involved and defendant says he wishes to bring suit for malicious prosecution in case he is able to have the decree of the lower court reversed does not make the controversy any the less moot. See authorities first cited."

This case was transferred to the Supreme Court which agreed with the opinion in the Court of Appeals. The court stated: "The motion to dismiss should be sustained for the reasons stated in the opinion of the Kansas City Court of Appeals reported in 158 S.W.2d 197." *Personal Finance Co. of Missouri v. Day,* 349 Mo. 1139, 164 S.W.2d 273, 274[2] (1942).

In the case of *Morrison v. State,* 252 S.W.2d 97, 100[2] (Mo.App.1952), this court, in refusing to dismiss a cause as moot, considered the possibility that decision of the cause might clarify the right of the parties in a future suit for damages. There were other considerations in that case, including public interest and possibility of recurrence of the question, recognized reasons for refusing to dispose of an appeal for mootness. The court stated that it reached its conclusion on the authority of *People ex rel. Wallace v. Labrenz,* 411 Ill. 618, 104 N.E.2d 769 (1952). However, the Illinois court did not consider the effect on future damage suits between the parties in concluding that the case before it was not moot. 104 N.E.2d 772–773. Possible future damage suits are too conjectural to require determination of a case in which no grant of relief is possible.

The motions of Thomas and KCATA to dismiss the appeal for failure of appellants' brief to comply with the rules are overruled. The motion of Thomas for damages for a frivolous appeal is overruled. The motions of Thomas and KCATA to dismiss the appeal for mootness are sustained.

Appeal dismissed.

All concur.